[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and for other relief brought to the Superior Court on October 18, 1994.
The court finds the following to be the facts of this case. The parties intermarried on May 24, 1992 at Brookfield, Connecticut. They have lived in Connecticut continuously throughout their marriage. The court has jurisdiction to hear this matter. There is no issue of this marriage. Neither party has received aid from the State of Connecticut. The marriage of the parties has broken down irretrievably. CT Page 8122
Both parties were previously married and have children of those earlier unions. The plaintiff's son, Daniel was 14 years old at the time of the dissolution; the defendant's daughter, Caitlyn, was 9. The defendant's daughter resided with the parties and spent alternate weekends with her father. The plaintiff's son resided with the parties in alternating weeks.
Both parties had completed college and the defendant had obtained 30 additional credits in the field of special education and 21 credits toward her master's degree in special education. She had taught school since 1979 and presently was a special education teacher in Danbury. The plaintiff operated an insurance agency owned by his parents and managed property for his father. At the time of the dissolution hearing both parties were 40 years of age and in good health.
The court concludes that there were two major causes for the breakdown of the marriage: the poor relationship between the defendant and the plaintiff's son, and the financial arrangements the parties had. The parties knew each other for two years before their marriage and made plans to marry one year before the wedding but they entered counseling just before their marriage and continued in counseling sporadically for several months. The principal cause of family tension was the dislike the defendant and Daniel felt for each other. Daniel was a child with some behavioral problems. Despite her training the defendant was unable to establish a tolerable relationship with Daniel. The court concludes from its observation during trial that, to an extent, she was also unwilling to establish such a relationship. On one occasion, Daniel used the defendant's hair spray. The defendant was so upset by this act that the parties spent a considerable amount of time in counseling sessions discussing the matter. The defendant would not have Daniel home when his father was not present because Daniel had kicked or hit her during an altercation. The plaintiff arranged for Daniel to go the the plaintiff's brother's home after school where the plaintiff would pick up Daniel after work in order to minimize the contact between Daniel and his wife.
Another source of marital tension was the defendant's dissatisfaction with the plaintiff's financial contribution to the family. At the time of the marriage the defendant earned approximately $40,000 per year and the plaintiff $26,228 per year. At the time of the final hearing the defendant was earning in excess of $50,000 per year and the plaintiff in excess of $46,000 per year. CT Page 8123
The plaintiff works for R.R. Ragette, Inc. in Eastchester, New York, a business owned by his parents. He is the sole employee and is an insurance agent. He also manages rental properties for his father. He is paid $26,228 by the company annually. He also does consulting work. In this latter field he earned $786 in 1993 but in 1994 his annual earnings were $20,959. The timing of the increase was suspicious in that it allowed him to increase his contribution to the household expenses prior to the institution of this dissolution action. The court finds that the plaintiff's explanation of his business dealings and the significant increase in his earnings less than satisfying.
At the time of the marriage the defendant owned a condominium unit in Brookfield into which the plaintiff and his son moved at the time of the marriage. The defendant had purchased the unit with funds she received as a result of her first divorce. In July 1991 the parties purchased raw land on Fox Den Road an Danbury for the sum of $75,000. Each contributed equally to the down payment and together the parties took a mortgage for $50,000. Because the defendant had used her summer paycheck toward the down payment the plaintiff paid $1400 in real estate taxes for her condominium. It was the plaintiff's hope to build a home on the land.
After the purchase of the Fox Den property, the plaintiff made the payments of $476 for the mortgage and property taxes from August until the marriage. Thereafter, the Fox Den mortgage was paid as part of the household expenses.
The parties decided after the marriage to lease the defendant's condominium and to move to rented quarters. The plaintiff made certain improvements to the defendant's condominium redoing the bathrooms, installing carpeting and painting.
In June 1993 the parties moved to a rented house on Pembroke Avenue which had only 2 bedrooms. The plaintiff, with the landlord's permission, converted the attic to provide a bedroom for his son, putting up sheetrock, installing wall to wall carpeting and spending $4000 in materials.
After the parties moved to the rented house the defendant leased her condominium and receives $1250 per month as gross income. She has used that income to pay down the principal on the condominium mortgage. She and her daughter continue to live in the rented house. CT Page 8124
Once the parties married the plaintiff gave the defendant $300 per week toward the household expenses except for a period when he was purchasing materials to renovate the Pembroke house. He began to pay one-half the household expenses in June, 1994.
At the time of the marriage the plaintiff had little personal property other than approximately $200 on deposit at the Newtown Savings Bank. The defendant had various accounts. The court will discuss only those accounts in which the plaintiff claims an interest, an Eagle Federal account, and a Lincoln National account.
Days after the marriage the defendant had $9,609 in her Eagle Federal account, no. 31-110710-01 (hereinafter 710-01). On November 27, 1992 she withdrew $2500 and placed it in a joint account, no. 31-0037-34 (hereinafter, 37-35). Subsequently she transferred another $1500 to the latter account. On December 4, 1993, she withdrew $3500 and deposited it to another joint account, no. 27-000140-63. Thereafter, she combined two certificates of deposit for a total of $8,180.17 which went into this latter joint account. The plaintiff then withdrew all the funds totaling $11,740 from this joint account and deposited them in another joint account, no. 29-000133-63, which required two signatures for withdrawals. He took this action without the defendant's knowledge in July 1994 and never obtained a signed signature card from her. He claimed he took this action because he thought she would remove all the money. The court finds no basis for that claim; the account remains in both names and is claimed by both parties. The plaintiff also claims an interest in a portion of the defendant's Lincoln Savings Retirement account on the basis that the funds were deposited during the marriage. The defendant saved monies from her paycheck and monies from the child support payments she received from her former husband.
The plaintiff did not save any monies toward a retirement fund, considering the Fox Den property an investment and the building of a home there a priority. He wanted money saved toward that goal. The defendant, who was earning considerably more than the plaintiff, did not believe that the plaintiff was contributing equitably to the family finances and criticized him for not earning more money. She saved money for her own retirement and her own purposes. Thus, the issue of saving for a home was a major cause of tension.
The court cannot ascribe a greater degree of fault to one party or the other. Before the marriage, the defendant knew that she had a CT Page 8125 difficult relationship with the plaintiff's son and she knew what the plaintiff reported he earned. The plaintiff, for his part, was less than forthcoming about the nature of his financial affairs.
The court has had the opportunity to observe the demeanor of the parties and has reviewed the exhibits in this case. In addition, the court has carefully considered the statutory criteria set forth in section 46b-81 of the General Statutes in reaching the decisions reflected in the orders that follow.
1. The marriage of the parties is dissolved on the grounds of irretrievable breakdown.
2. The Fox Den property is presently listed for sale. Until the property is sold both parties shall be equally responsible for the monthly payments of the first mortgage, insurance and property taxes.
At the time of sale, after the payment of the mortgage, conveyance taxes, brokers' commission, attorney's fees associated with the closing and other customary closing costs the net proceeds shall be divided equally between the parties. The court shall retain jurisdiction over any disputes in connection with the sale of the property.
3. The plaintiff shall retain the sum of $6000 of the Eagle Federal Savings and Loan account. This is the sum the court finds equitable for the payment of the taxes on the defendant's condominium and the labor and materials he furnished to improve the unit and the portion of the Fox Den payments he made before the marriage. The defendant shall be entitled to retain the balance, in the account.
4. The defendant shall retain the funds in the Lincoln National account and the Waterbury Connecticut Teacher's Credit Union account. To the extent necessary, the plaintiff shall execute any documents required to release any interest he may have in these accounts.
5. Each party shall retain the personal property in his/her own possession.
6. Each party shall retain the remaining assets which appear on his/her own financial affidavit which have not been disposed of herein. The defendant shall execute, to the extent necessary, any CT Page 8126 documents required to release any interest she may have in the plaintiff's IRA account.
7. Each party shall be responsible for his/her own attorney's fees.
8. In the event any deficiency assessment occurs with regard to the state and federal income tax returns filed jointly by the parties, each shall notify the other immediately. They shall be jointly liable for any deficiency assessments, penalties or interest. In the event the adjustment arises from the non-inclusion of income or the improper claim of a deduction the party responsible for the item adjusted shall be solely liable for the portion of the deficiency assessment, penalty or interest attributable to that item.
All other claims for relief, not expressly addressed herein, have been rejected.
Judgment may enter accordingly.
Leheny, J.